FILED

2013 MAR 29  PM 12: 21

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

BY _____

1  Ian Wallach, SBN 237849
   FELDMAN & WALLACH
2  606 Venice Blvd., Suite C
   Venice, CA 90291
3  Telephone: (310) 577-2001
   Fax: (310) 564-2004
4  ian@feldmanwallach.com

5  *Attorneys for Plaintiff,*
6  Alpha Walker

7

8            UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10                 CV13-02268- RSWC (MRWSO)
   _____

11 ALPHA WALKER,              )  Case No.:
                              )  Complaint For:
12        Plaintiff,          )    1. Preliminary Injunction;
                              )    2. Permanent Injunction;
13        vs.                 )    3. Violation of 18 U.S.C. § 2511
                              )       (Interception And Disclosure Of
14                            )       Wire, Oral, Or Electronic
   TMZ PRODUCTIONS, INC., EHM )       Communications Prohibited);
15                            )    4. Invasion of Privacy (Common Law
   PRODUCTIONS, INC., TIME    )       Claim);
16                            )    5. Violation of Cal. Civ. Code §
   WARNER INC., CHRISTOPHER   )       1708.8) (Invasion of Privacy –
17                            )       Statutory Claim)
   MANIVONG, AND DOES 1~10,   )    6. Intentional Infliction of Emotional
18                            )       Distress; and
   inclusive,                 )    7. Violation of Cal. Pen. Code §§
19                            )       632; 637.2 *et seq.*
   Defendants.                )
20

21

22

23

24

25

26

27

28

Complaint for Injunctive Relief and Money Damages

# COMPLAINT FOR MONEY DAMAGES
# AND INJUNCTIVE RELIEF

## PRELIMINARY ALLEGATIONS

### INTRODUCTION

1. On May 16, 2012, a hearing took place before Department 33 of the Superior Court of California, County of Los Angeles, in a criminal matter, wherein it was alleged that Plaintiff Alpha Walker ("Plaintiff") and his co-defendant attempted to extort Steveland Morris, who is also known as "Stevie Wonder" (this criminal proceeding is referred to herein as "the Wonder Matter"). During the hearing, the Judge discovered that a microphone had been placed on his bench without knowledge, and that privileged sidebar conversations had been recorded.  It was then discovered that separate microphones had been hidden at both sides of counsel table, capturing privileged conversations of counsel for the prosecution and counsel for the defense.  It was then learned that these privileged communications were instantaneously transferred to the headquarters of TMZ Enterprises, Inc. ("TMZ").  The transcript of the proceedings – discussing these events – is attached hereto as "Exhibit A".

2. Plaintiff Alpha Walker ("Plaintiff") is, and at all times mentioned herein was, a resident of the County of Los Angeles.

3. Defendant TMZ is an entity of unknown origin that is licensed to do business in the State of California.

4. TMZ is a news organization that operates both a news television show and a website and chronicles the events of famous individuals.

5. EHM Productions, Inc. ("EHM") is an entity of unknown origin that is licensed to do business in the State of California.

6. EHM is an affiliate or owner of TMZ and maintains control over TMZ and its conduct.

7. Time Warner, Inc, ("Time Warner") is an entity of unknown origin that is licensed to do business in the State of California.

8. Time Warner is an affiliate or owner of EHM and/or TMZ and maintains control over the conduct of TMZ and its conduct.

9. Christopher Manivong ("Manivong") is a cameraman and mediaperson who -- working at the instruction of the other defendants -- surreptitiously placed microphones on the judge's bench and behind books at counsel table for both the prosecution and defense, enabling the secret recording of (a) privileged and off-the-record communications between counsel and the Court at sidebar; (b) privileged communications among Deputy District Attorney Frances Young and her colleagues relating to this and other matters; and (c) conversation between counsel for defendants directly related to potential defenses.

10. DOES 1 – 10 are entities whose names are heretofore unknown to Plaintiff but are responsible, in whole or part, for the harm alleged herein. If and when the identities of these parties become known to Plaintiff, Plaintiff will, depending on the applicable Court rule, either amend the Complaint to include the defendant's proper name or seek leave to amend the Complaint to do so.

## VENUE

11. Venue is proper as the acts that form the basis of this action occurred in Los Angeles County (at the Courthouse located at 211 N. Temple Street, Los Angeles, CA 90012).

**JURISDICTION**

12. This Court has jurisdiction to hear this matter as a primary cause of action -- 18 U.S.C. § 2511 -- is brought under Federal law.

13. This Court has jurisdiction to hear the remaining causes of action as they are both ancillary to and arise out of the same set of operative facts as the claim brought under 18 U.S.C. § 2511.

**FACTUAL ALLEGATIONS**

14. Plaintiff was a defendant in the Wonder Matter, pending before the Superior Court for the State of California in the Clara J. Shortridge Foltz Criminal Justice Center (commonly known as, and referred to herein as "CCB") (a plea was ultimately entered in this matter to a lesser charge, allowing for an immediate release and a reduction to a misdemeanor that would be expunged upon successful completion of probation).

15. A hearing in the Wonder Matter took place on May 16, 2012 ("the May 16 Hearing").

16. TMZ submitted an order to be present and film the on-the-record portions of the proceeding.

17. Presumably, all of TMZ's conduct alleged herein was done at the direction of, or with the knowledge of, the other defendants.

18. Before TMZ's motion to be present was heard, Manivong, a camera person for TMZ, entered the Courtroom and placed microphones out of view on (a) the Judge's Bench; (b) behind books at counsel table in front of the Deputy District Attorneys; and (c) behind books at counsel table in front of counsel for defendants.

19. The camera used by Manivong did not have any form of indicator that would allow a courtroom deputy, counsel, or other party to see that the camera was recording or transmitting.

20. The three microphones used by Manivong did not have any form of indicator that would allow a courtroom deputy, counsel, or other party to see that the three microphones were recording or transmitting.

21. Upon information and belief, the camera was not equipped with any form of mechanism that would stop power or otherwise terminate its recording or transmitting capacity when the proceedings were off the record.

22. Upon information and belief, the microphone was not equipped with any form of mechanism that would stop power or otherwise terminate its recording or transmitting capacity when the proceedings were off the record.

23. Upon information and belief, the transmitter was not equipped with any form of mechanism that would stop power or otherwise terminate transmission of recordings of proceeding that were captured, even though the proceedings were off the record.

24. At no time did Manivong or anyone else inform the Court, the Courtroom Deputy, or counsel that the microphones had been placed before the attorneys and the Judge, or that they were recording.

25. Prior to TMZ's motion to be present was considered by the Court, Plaintiff was erroneously brought out of "lock-up" by the Courtroom Deputy, but then quickly returned. It would later be learned – when the tape was viewed by all counsel and the Judge in chambers – that Plaintiff had been filmed against the wall, with a close frame-up of his head, while in handcuffs, and that this footage had been immediately transmitted to TMZ's headquarters. This took

place prior to the issuance of any order granting TMZ permission to film in the Courtroom.

26. The ill-gotten image of Plaintiff taken by Manivong prior to the issuance of the Court's Order and referenced above presented Plaintiff in a false and negative light.

27. Honorably Ray G. Jurado, in Department 33 of the Court, granted TMZ's order to be present and record, provided there was compliance with Local Rule 1.150.

28. California Rule of Court, Rule 1.150 provides as follows, in relevant part (*emphasis added*):

Rule 1.150. Photographing, recording, and broadcasting in court

(a) Introduction

The judiciary is responsible for ensuring the fair and equal administration of justice. The judiciary adjudicates controversies, both civil and criminal, in accordance with established legal procedures in the calmness and solemnity of the courtroom. Photographing, recording, and broadcasting of courtroom proceedings may be permitted as circumscribed in this rule if executed in a manner that ensures that the fairness and dignity of the proceedings are not adversely affected. This rule does not create a presumption for or against granting permission to photograph, record, or broadcast court proceedings.

(b) Definitions As used in this rule:

(1) **"Media coverage" means any photographing, recording, or broadcasting of court proceedings by the media using television, radio, photographic, or recording equipment.**

(2) **"Media" or "media agency" means any person or organization engaging in news gathering or reporting and includes any newspaper, radio or television station or network, news service, magazine, trade paper, in-house publication, professional journal, or other news-reporting or news-gathering agency.**

(6) **"Recording" means the use of any analog or digital device to aurally or visually preserve court proceedings. As used in this rule, recording does not include handwritten notes on the court record, whether by court reporter or by digital or analog preservation.**

(7) "**Broadcasting**" **means a visual or aural transmission or signal, by any method, of the court proceedings, including any electronic transmission or transmission by sound waves.**

(c) Photographing, recording, and broadcasting prohibited:

**Except as provided in this rule, court proceedings may not be photographed, recorded, or broadcast.** This rule does not prohibit courts from photographing or videotaping sessions for judicial education or publications and is not intended to apply to closed-circuit television broadcasts solely within the courthouse or between court facilities if the broadcasts are controlled by the court and court personnel.

(e) **Media coverage**

**Media coverage may be permitted only on written order of the judge as provided in this subdivision.** The judge in his or her discretion may permit, refuse, limit, or terminate media coverage. This rule does not otherwise limit or restrict the right of the media to cover and report court proceedings.

(1)  Request for order

The media may request an order on Media Request to Photograph, Record, or Broadcast (form MC-500). The form must be filed at least five court days before the portion of the proceeding to be covered unless good cause is shown. A completed, proposed order on Order on Media Request to Permit Coverage (form MC-510) must be filed with the request. The judge assigned to the proceeding must rule on the request. If no judge has been assigned, the request will be submitted to the judge supervising the calendar department, and thereafter be ruled on by the judge assigned to the proceeding. The clerk must promptly notify the parties that a request has been filed.

(2)  Hearing on request

The judge may hold a hearing on the request or may rule on the request without a hearing.

(3) Factors to be considered by the judge in ruling on the request, the judge is to consider the following factors:

(A) **The importance of maintaining public trust and confidence in the judicial system;**

(E) **The privacy rights of all participants in the proceeding, including witnesses, jurors, and victims;**

(J) The effect on any subsequent proceedings in the case;

(O) **The security and dignity of the court;**

7

Complaint for Injunctive Relief and Money Damages

(R) **The maintenance of the orderly conduct of the proceeding;**

(4) Order permitting media coverage

The judge ruling on the request to permit media coverage is not required to make findings or a statement of decision. The order may incorporate any local rule or order of the presiding or supervising judge regulating media activity outside of the courtroom. The judge may condition the order permitting media coverage on the media agency's agreement to pay any increased court-incurred costs resulting from the permitted media coverage (for example, for additional court security or utility service). **Each media agency is responsible for ensuring that all its media personnel who cover the court proceeding know and follow the provisions of the court order and this rule.**

(6) Prohibited coverage

**The judge may not permit media coverage of the following:**

(B) **Proceedings closed to the public;**

(E) <u>**Conferences**</u> between an attorney and a client, witness, or aide; <u>**between attorneys; or between counsel and the judge at the bench**</u>.

(8) Normal requirements for media coverage of proceedings

Unless the judge in his or her discretion orders otherwise, the following requirements apply to media coverage of court proceedings:

(D) **Microphones and wiring must be unobtrusively located in places approved by the judge** and must be operated by one person.

(f) Sanctions Any violation of this rule or an order made under this rule is an unlawful interference with the proceedings of the court and may be the basis for an order terminating media coverage, a citation for contempt of court, or an order imposing monetary or other sanctions as provided by law.

29. The hearing commenced. Conversations took place between counsel and the Judge at sidebar. Conversations among defense counsel took place at counsel table. Conversations among prosecutors also took place at the other side of counsel table.

8

30. Midway into the hearing, Hon. Judge Jurado realized that a microphone had been serruptiously placed on his bench, capturing, and recording, all sidebar conversations. Judge Jurado informed the parties and admonished Manivong.

31. Manivong repeatedly stated that it was the "policy" of TMZ to place active microphones at those locations and in that fashion and that he was only following TMZ's policy. This is clearly documented in the transcript of the May 16 Hearing (Exhibit A).

32. Deputy District Attorney Frances Young – the prosecutor handling the Wonder Matter -- then noticed that microphones had been secretly placed behind books at the prosecutors' end of counsel table, and had recorded communications between prosecutors. Manivong repeatedly stated that it was the "policy" of TMZ to place microphones there and that he was only following TMZ's policy. This is clearly documented in the transcript of the May 16 Hearing (Exhibit A).

33. Counsel for the Plaintiff and counsel for Plaintiff's co-defendant then noticed that microphones had been secretly placed behind books at the defense counsels' end of counsel table, and had recorded communications between defense counsel about the Wonder Matter. These conversations included sensitive privileged information directly relevant to available defenses in the Wonder matter.

34. When questioned by the Court, Manivong stated that the volume was "turned down" when sidebar conversations were taking place, or during counsel discussion. Upon further inquiry, Manivong acknowledged that content was either discernable, or could be rendered discernible through

enhancement.  This is clearly documented in the transcript of the May 16 Hearing (Exhibit A).

35. Per the Judge's order, counsel and the Judge eventually went into chambers to view the recording.  Social conversations were clearly discernible from the tape.  And issues of legal strategy – discussed among defense counsel – were likewise discernible at times but would need electronic enhancement to become fully discernible.  Although the Judge would ultimately state that nothing was discernible, counsel for the defendants and the prosecutors could clearly discern conversations made at counsel table, including, but not limited to:

    a.  conversations between counsel for each separate defendant relating to the Wonder Matter; and

    b.  conversations between Deputy District Attorney Frances Young and another Deputy District Attorney about a separate matter, discussing work that had been done, and capturing the accolades that Deputy District Attorney Frances Young made to the other prosecutor regarding his work on the other matter.

36. Honorable Jurado determined that counsel should view and hear the tape, which then occurred in chambers.  In so doing, the prosecutors were able to hear privileged information of the defense, and the defense counsel was able to hear the prosecutors speak in detail about a separate matter.

37. Honorable Jurado did not believe that anything of substance could be heard on the tape as is, but did not address whether or not the recording could be enhanced to render it audible.

38. Upon a request to TMZ that it subsequently destroy any ill-gotten audio or any video obtained prior to the Court's order granting TMZ's request to be

present, TMZ's counsel Elizabeth Neubauer stated that she was under no obligation to destroy the video and could act as she pleases (Exhibit B, with the preceding letter also attached).

39. As a result of this conduct, Plaintiff experienced tremendous fear and distrust of the judicial system.

40. Moreover, Plaintiff is currently seeking treatment for issues related to stress and anxiety.  Plaintiff's suffering was exacerbated by Defendants' conduct herein.

41. Furthermore, Plaintiff's defense in the Wonder Matter was compromised as his counsel had to expend time and effort attempting to ensure that the ill-gotten recordings and images would not be released to the public.

42. Upon information and belief, Defendants' conduct is ongoing.

43. Defendants' ongoing conduct similar to that alleged herein violates the attorney-client privileges, the attorney work-product privileges, and the confidentiality extended to the Court and Counsel while at sidebar.  Its threat to the public interest is tremendous.  No matter who the alleged victim in a case is, there can be no lawful justification for the conduct that took place at the May 16 Hearing (and apparently continues today).

44. Such conduct is unlawful and in violation of 18 U.S.C. § 2511, *et. seq.;* as well as several provisions of the Penal Code of the State of California; and the Local Rules for the Superior Courts of the State of California.

45. Plaintiff's suffering from this event is real. The events complained of herein caused and continue to cause extensive emotional distress to Plaintiff.

//
//
//
//
//

## COUNT ONE

### REQUEST FOR PRELIMINARY INJUNCTION
### AGAINST ALL DEFENDANTS

46. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 – 45 above.

47. The preliminary injunction requested is set forth below in the Prayer for Relief and a Proposed Order is attached as Exhibit C.

48. The requested preliminary injunction is necessary to avoid further violations of 18 U.S.C. § 2511, *et seq.* as well as provisions of the Penal Code of the State of California; and the Local Rules for the Superior Courts of the State of California (including, but not limited to, Cal. Rule of Court. Rule. 1.150).

49. Irreparable harm has already occurred to Plaintiff.

50. Such harm will continue to occur to Plaintiff in the absence of the requested injunction in that:

    a. Defendants may still apply for and receive permission to be present, record, transmit, and potentially broadcast proceedings of Plaintiff, who is still on probation in the Wonder Matter (in the Wonder Matter, Plaintiff ultimately entered into a "earn-an-expungable-misdemeanor" agreement where Plaintiff was immediately released); thus infringing upon Plaintiff's right to privacy, his right to the attorney-client and attorney work product privileges, and his right to counsel;

    b. Monetary damages are not sufficient as the injury set forth above is not clearly quantifiable;

    c. There is no hardship to Defendants as – provided Defendants comply with the requested preliminary injunction – Defendants will still be able to record, transmit, and broadcast publically-

available information related to on-the-record portions of Courtroom proceedings, compliant with law;

d. There is a very high likelihood that Plaintiff will succeed on the merits of his claims;

e. This injunction is necessary to protect privacy rights and to prevent deceptive commercial practices; and

f. The Public Interest will be best served in that the confidentiality afforded to conversations between prosecutors during counsel table, defense counsel at counsel table, and counsel and Bench Officers at sidebar or otherwise off the record, will not potentially be intruded upon by defendants, thus protecting the integrity of such privileged communications and protecting the justice system from unwarranted and unlawful intrusion.

## COUNT TWO

### REQUEST FOR PERMANENT INJUNCTION
### AGAINST ALL DEFENDANTS

51. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 – 50 above.

52. The permanent injunction requested is set forth below in the Prayer for Relief and a Proposed Order is attached as Exhibit D.

53. The requested permanent injunction is necessary to avoid further violations of 18 U.S.C. § 2511, *et seq.* as well as provisions of the Penal Code of the State of California; and the Local Rules for the Superior Courts of the State of California (including, but not limited to, Cal. Rule of Court. Rule. 1.150).

54. Irreparable harm has already occurred to Plaintiff.  Issuance of the requested permanent injunction is necessary, as -- in its absence -- harm will continue to occur to Plaintiff in that:

    a.  Defendants may still apply for and receive permission to be present, record, transmit, and potentially broadcast proceedings of Plaintiff, who is still on probation in the Wonder Matter; thus infringing upon Plaintiff's right to privacy, his right to the attorney-client and attorney work product privileges, and his right to counsel;

    b.  Monetary damages are not sufficient as the injury set forth above is not clearly quantifiable;

    c.  There is no hardship to Defendants as – provided Defendants comply with the requested preliminary injunction – Defendants will still be able to record, transmit, and broadcast publically-available information related to on-the-record portions of Courtroom proceedings;

    d.  There is a very high likelihood that Plaintiff will succeed on the merits of his claims;

    e.  This injunction is necessary to protect privacy rights and to prevent deceptive commercial practices; and

    f.  The Public Interest will be best served in that the confidentiality afforded to conversations between prosecutors during counsel table, defense counsel at counsel table, and counsel and Bench Officers at sidebar or otherwise off the record, will not potentially be intruded upon by defendants, thus protecting the integrity of such privileged communications and protecting the justice system from unwarranted and unlawful intrusion.

## COUNT THREE

### VIOLATION OF 18 U.S.C. § 2511
### (INTERCEPTION AND DISCLOSURE OF WIRE, ORAL, OR
### ELECTRONIC COMMUNICATIONS PROHIBITED)

55. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 – 54 above.

56. The Defendants intercepted, or endeavored to intercept, oral communications, including:

    a. off-the-record conversations between counsel and Judge Jerudo at the Judge's Bench during the May 16 Hearing of the Wonder Matter;

    b. privileged and confidential communications between defense counsel recorded without their knowledge at counsel table while not on the record; and

    c. privileged and confidential communications between prosecutors recorded without their knowledge at counsel table while not on the record.

57. The interception of such communications was done intentionally.

58. The interception of such communications was done through the use of microphones and other transmitting devices.

59. The interception of such communications was done with the intention to disclose the communications to others.

60. The interception, recording, and broadcast of such communications were not lawful.

61. Defendants' conduct was willful, wanton, malicious, oppressive and in reckless disregard of the law and the rights of Plaintiff and justifies the award of exemplary and punitive damages.

## COUNT FOUR

### INVASION OF PRIVACY
### (COMMON LAW CLAIM)

62. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 – 61 above.

63. Defendants intruded into the private communications between Plaintiff's lawyer, counsel to the co-defendant, and the Court.

64. Plaintiff had a reasonable expectation of privacy relating to conversations pertaining to the Wonder Matter that were off-the-record and intended to be solely between defense counsel or counsel and the Court.

65. Plaintiff had a legally recognized expectation of privacy relating to conversations pertaining to the Wonder matter that were off-the-record and intended to be solely between defense counsel or counsel and the Court.

66. Defendants' intrusion was in a manner highly offensive to a reasonable person.

67. As a result of Defendants' intrusion into Plaintiff's privacy, Plaintiff was harmed in an amount to be determined at trial.

68. Defendants' conduct was willful, wanton, malicious, oppressive and in reckless disregard of the law and the rights of Plaintiff and justifies the award of exemplary and punitive damages.

## COUNT FIVE

### VIOLATION OF CAL. CIV. CODE § 1708.8
### (INVASION OF PRIVACY – STATUTORY CLAIM)

69. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 – 68 above.

Complaint for Injunctive Relief and Money Damages

70. Defendants attempted to capture, and did capture, an impression of Plaintiff engaging in a personal activity (being handcuffed while waiting for his case to be called).

71. Plaintiff had a reasonable expectation of privacy that included, but was not limited to, not being filmed or having his image transmitted by Defendants prior to Defendants obtaining permission from the Court to film and record in the Courtroom during the May 16 Hearing.

72. Defendants' conduct was in a manner that is offensive to a reasonable person.

## COUNT SIX

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 – 72 above.

74. Defendants' aforementioned conduct was undertaken with the intention of causing, or reckless disregard of the probability of causing, emotional distress to Plaintiff.

75. Plaintiff suffered severe and extreme emotional distress as a result of Defendants' aforementioned conduct.

76. Defendants' aforementioned conduct was the actual and proximate cause of Plaintiff's severe and extreme emotional distress.

77. Defendants' aforementioned conduct was extreme and outrageous conduct.

78. Defendants' aforementioned conduct was so extreme as to exceed all bounds of that usually tolerated in a civilized community.

79. As a result of Defendants' aforementioned conduct, Plaintiff was injured and should be compensated in an amount to be determined at trial.

80. Defendants' conduct was willful, wanton, malicious, oppressive and in reckless disregard of the law and the rights of Plaintiff and justifies the award of exemplary and punitive damages.

## COUNT SEVEN

### VIOLATION OF P.C. §§ 632; 637.2 *ET SEQ*.
### (EAVESDROPPING ON CONFIDENTIAL COMMUNICATION)

81. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 – 80 above.

82. Defendants intentionally eavesdropped on the confidential communication of Plaintiff's attorney.

83. Defendants intentionally recorded the confidential communication of Plaintiff's attorney.

84. Defendants did so by means of any electronic amplifying or recording device.

85. Defendants did so without Plaintiff's consent.

86. As a result of Defendants' aforementioned conduct, Plaintiff was damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

1. Plaintiff seeks general damages as to each of the counts pled herein, as well as costs and any other award that the Court deems proper.  Additionally:

### (AS TO COUNT ONE)
### (REQUEST FOR PRELIMINARY INJUNCTION
### AGAINST ALL DEFENDANTS)

2. Plaintiff requests that this Court issue an Order for a Preliminary Injunction:

    a.  enjoining Defendants from recording anything during a Court proceeding other than words spoken and images available to be captured:

        i.  after Defendants have obtained a court order allowing them to do so;

        ii.  only when on the record; and

        iii. only in compliance with California Rule of Court Rule 1.150 or other applicable rule;

    b.  enjoining Defendants from using microphones in connection with the recording and transmission of Courtroom proceedings unless those microphones are prominently displayed;

    c.  enjoining Defendants from using cameras unless, to the satisfaction of this Court or the Court that issued the order granting Defendants permission to record, the cameras have alerting devices, such as lights, that make clear when the camera is recording (provided to this Court's satisfaction, or the satisfaction of the Court where the recording and broadcasting is taking place, that the alerting devices are not disturbing and in compliance with Cal. Rule of Court, Rule 1.150(e)(8)(B));

    d.  enjoining Defendants from using microphones unless, to the satisfaction of this Court or the Court that issued the order granting Defendants permission to record, the microphones have alerting devices, such as lights, that make clear when the microphone is recording (provided to this Court's satisfaction, or the satisfaction of the Court where the recording and broadcasting is taking place,

that the alerting devices are not disturbing and in compliance with Cal. Rule of Court, Rule 1.150(e)(8)(B));

   e.  enjoining Defendants from simultaneously transmitting to anywhere any data recorded or captured during a Courtroom proceeding when the matter is not being heard on the record; and

   f.  enjoining Defendants from using any camera or other device capable of transmitting data captured during Courtroom proceedings unless that camera or device is both:

      i.  approved by this Court or the Court issuing the order allowing Defendants to be present and record during Courtroom proceedings; and

     ii.  have alerting devices, such as lights, that make clear when the device is transmitting (provided to this Court's satisfaction, or the satisfaction of the Court where the recording and broadcasting is taking place, that the alerting devices are not disturbing and in compliance with Cal. Rule of Court, Rule 1.150(e)(8)(B));

3. Plaintiff also seeks reasonable attorneys' fees and costs incurred in obtaining this injunction per applicable law, including, but not limited to, 18 USC § 2520(b)(3), and any other awards that the Court deems just and proper.

**(AS TO COUNT TWO)**
**(REQUEST FOR PERMANENT INJUNCTION**
**AGAINST ALL DEFENDANTS)**

4. Plaintiff seeks a permanent injunction:

20

a. enjoining Defendants from recording anything during a Court proceeding other than words spoken and images available to be captured:

    i. after Defendants have obtained a court order allowing them to do so; and

    ii. only when on the record;

b. enjoining Defendants from using microphones in connection with the recording and transmission of Courtroom proceedings unless those microphones are prominently displayed;

c. enjoining Defendants from using cameras unless, to the satisfaction of the Court that issued the order granting Defendants permission to record, the cameras have alerting devices, such as lights, that make clear when the camera is recording (provided to the satisfaction of the Court where the recording and broadcasting is taking place, that the alerting devices are not disturbing and in compliance with Cal. Rule of Court, Rule 1.150(e)(8)(B));

d. enjoining Defendants from using microphones unless, to the satisfaction of the Court that issued the order granting Defendants permission to record, the microphones have alerting devices, such as lights, that make clear when the microphone is recording (provided to the satisfaction of the Court where the recording and broadcasting is taking place, that the alerting devices are not disturbing and in compliance with Cal. Rule of Court, Rule 1.150(e)(8)(B);

Complaint for Injunctive Relief and Money Damages

    e.  enjoining Defendants from simultaneously transmitting to anywhere any data recorded or captured during a Courtroom proceeding when the matter is not being heard on the record; and

    f.  enjoining Defendants from using any camera or other device capable of transmitting data captured during Courtroom proceedings unless that camera or device is both:

        i.  approved by the Court issuing the order allowing Defendants to be present and record during Courtroom proceedings; and

        ii.  have alerting devices, such as lights, that make clear when the device is transmitting (provided to this Court's satisfaction, or the satisfaction of the Court where the recording and broadcasting is taking place, that the alerting devices are not disturbing and in compliance with Cal. Rule of Court, Rule 1.150(e)(8)(B);.

5. Plaintiff also seeks the costs of reasonable attorneys' fees and costs incurred in obtaining this injunction per applicable law, including, but not limited to, 18 USC § 2520(b)(3) and any other awards that the Court deems just and proper.

**(AS TO COUNT THREE)**
**(VIOLATION OF 18 U.S.C. § 2511)**
**(INTERCEPTION AND DISCLOSURE OF WIRE, ORAL, OR**
**ELECTRONIC COMMUNICATIONS PROHIBITED)**

6. Actual damages in an amount to be determined at trial but in no case less than $100,000, plus any profits made by Defendants as a result of the violation;

Complaint for Injunctive Relief and Money Damages

7. Punitive Damages (pursuant to 18 U.S.C. § 2520 *et. seq.*);

8. Reasonable attorneys' fees and costs (pursuant to 18 U.S.C. § 2520 *et. seq.*);

9. For the costs of suit herein; and

10. Any other awards that the Court deems just and proper.

### (AS TO COUNT FOUR)
### (INVASION OF PRIVACY)
### (COMMON LAW CLAIM)

11. Actual damages in an amount to be determined at trial;

12. For medical and related expenses, according to proof;

13. For lost earnings, past and future, according to proof;

14. For Special Damages for pain and suffering in an amount to be determined at trial;

15. Punitive Damages;

16. Reasonable attorneys' fees and costs (pursuant to 18 U.S.C. § 2520 *et. seq.*);

17. For the costs of suit herein; and

18. Any other awards that the Court deems just and proper.

### (AS TO COUNT FIVE)
### (CAL. CIV. CODE § 1708.8)
### (INVASION OF PRIVACY – STATUTORY CLAIM)

19. Three times the actual damages in an amount to be determined at trial.

20. Three times the total medical and related expenses, according to proof;

21. Three times the lost earnings, past and future, according to proof;

22. Three times the Special Damages for pain and suffering in an amount to be determined at trial;

23. Punitive Damages;

Complaint for Injunctive Relief and Money Damages

24. Reasonable attorneys' fees and costs (pursuant to 18 U.S.C. § 2520 *et. seq.*);

25. For the costs of suit herein; and

26. Any other awards that the Court deems just and proper.

## (AS TO COUNT SIX)
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

27. Actual damages in an amount to be determined at trial;

28. Total medical and related expenses, according to proof;

29. Lost earnings, past and future, according to proof;

30. Special Damages for pain and suffering in an amount to be determined at trial;

31. Punitive Damages;

32. Reasonable attorneys' fees and costs (pursuant to 18 U.S.C. § 2520 *et. seq.*);

33. For the costs of suit herein;

34. Any other awards that the Court deems just and proper.

## (AS TO COUNT SEVEN)
## (VIOLATION OF CAL. PEN. CODE §§ 632; 637.2 *ET SEQ.*)
## (EAVESDROPPING ON CONFIDENTIAL COMMUNICATION)

35. The greater amount of either five thousand dollars or three times the actual damages in an amount to be determined at trial, said actual damages including, but not limited to, the total medical and related expenses, and lost earnings, past and future;

36. Special Damages for pain and suffering in an amount to be determined at trial;

37. Punitive Damages;

Complaint for Injunctive Relief and Money Damages

38. Reasonable attorneys' fees and costs (pursuant to 18 U.S.C. § 2520 *et. seq.*);

39. For the costs of suit herein; and

40. Any other awards that the Court deems just and proper.


DATED:  March 28, 2013                    FELDMAN & WALLACH

                                          By: _____
                                              Ian Wallach
                                              Attorneys for Plaintiff
                                              Alpha Walker

Complaint for Injunctive Relief and Money Damages

# EXHIBIT A

1        SUPERIOR COURT OF THE STATE OF CALIFORNIA

2           FOR THE COUNTY OF LOS ANGELES

3  DEPARTMENT 33          HON. RAY G. JURADO, JUDGE

4

5  PEOPLE OF THE STATE OF CALIFORNIA,  )
                               )
6           PLAINTIFF,       )
                               )
7      VS.                )  NO. BA397254
                               )
8  ALPHA WALKER(01) AND        )
    TAMARA E. DIAZ(02),       )
9                        )  MAY 24 2012
                               )
10         DEFENDANT.       )

11

          REPORTER'S TRANSCRIPT OF PROCEEDINGS
12

13              MAY 16, 2012

14

15  APPEARANCES:

16  FOR THE PEOPLE:    STEVE COOLEY, DISTRICT ATTORNEY
                  BY:  FRANCES YOUNG, DEPUTY
17                18000 FOLTZ CRIMINAL JUSTICE CENTER
                  210 WEST TEMPLE STREET
18                LOS ANGELES, CALIFORNIA  90012

19  FOR DEFENDANT
    WALKER:
20                FELDMAN & WALLACH
                  BY: IAN WALLACH, ATTORNEY
21                606 VENICE BOULEVARD
                  SUITE C
22                VENICE, CALIFORNIA 90291

23  FOR DEFENDANT
    DIAZ:             OFF. OF THE ALTERNATE PUBLIC DEFENDER
24                BY:  ALEXANDER SARIO, DEPUTY
                  35 HALL OF RECORDS
25                320 WEST TEMPLE STREET
                  LOS ANGELES, CALIFORNIA  90012
26

27
                YOLANDA HUFF, CSR NO. 12570
28                OFFICIAL REPORTER    COPY

1

| | | |
|---|---|---|
| 1 | CASE NUMBER: | BA397254 |
| 2 | CASE NAME: | PEOPLE V. WALKER AND DIAZ |
| 3 | LOS ANGELES, CALIFORNIA | MAY 16, 2012 |
| 4 | DEPARTMENT 33 | HON. RAY G. JURADO, JUDGE |
| 5 | REPORTER: | YOLANDA HUFF, CSR NO. 12570 |
| 6 | TIME: | 9:15 A.M. |

7

8 APPEARANCES:

9     DEFENDANT ALPHA WALKER AND TAMARA E. DIAZ, PRESENT

10 WITH COUNSELS, IAN WALLACH, ATTORNEY, AND ALEXANDER

11 SARIO, DEPUTY ALTERNATE PUBLIC DEFENDER; FRANCES YOUNG,

12 DEPUTY DISTRICT ATTORNEY, REPRESENTING THE PEOPLE OF THE

13 STATE OF CALIFORNIA.

14

15     THE COURT:  CALL NUMBER 9 ON THE CALENDAR.  ALPHA

16 WALKER AND TAMARA DIAZ, CASE NUMBER BA397254.

17         GOOD MORNING, COUNSEL.  APPEARANCES, PLEASE.

18     MS. YOUNG:  GOOD MORNING, YOUR HONOR.  FRANCES YOUNG

19 APPEARING ON BEHALF OF THE PEOPLE.

20     MR. HILL:  FOR MR. WALKER, ROBERT HILL FROM THE

21 PUBLIC DEFENDER'S OFFICE.  HOWEVER, YOUR HONOR, THE PUBLIC

22 DEFENDER'S OFFICE NOW DECLARES CONFLICT OF INTEREST AND I

23 MOVE TO BE RELIEVED.

24     THE COURT:  THE PUBLIC DEFENDER'S OFFICE IS

25 RELIEVED.

26     MR. HILL:  DISCOVERY HAS BEEN PROVIDED TO THE

27 ATTORNEY -- RETURNED TO THE DISTRICT ATTORNEY.

28     MS. YOUNG:  AND I HAVE, IN TURN, PROVIDED THE

2

1   DISCOVERY TO MR. WALLACH WHO IS GOING TO BE SUBBING IN FROM
2   THE BAR PANEL.

3       MR. WALLACH:  IAN WALLACH, FELDMAN & WALLACH, ICDA,
4   FOR MR. WALKER.

5       MR. HILL:  THANK YOU.

6       MR. WALLACH:  ON BEHALF OF HIM, AND WE'LL BRING THEM
7   OUT IN A SECOND, I HAVE RECEIVED DISCOVERY, YOUR HONOR.  IF
8   WE COULD HAVE A BRIEF EITHER ON OR OFF THE RECORD TALK
9   ABOUT DATES.

10      MR. SARIO:  YOUR HONOR ALEX SARIO DEPUTY ALTERNATE
11  PUBLIC DEFENDER FOR MS. DIAZ.  THEY'RE NOT PRESENT IN THE
12  COURT RIGHT NOW.

13      THE COURT:  MR. WALLACH YOU'RE APPOINTED, NOW
14  COUNSEL OF RECORD FOR MR. WALKER.

15          AND WOULD COUNSEL LIKE TO APPROACH ON THE
16  MEDIA REQUEST MATTER?

17      MR. WALLACH:  YES.

18

19          (OFF-THE-RECORD DISCUSSION.)

20

21      THE COURT:  BACK ON THE RECORD IN THE WALKER DIAZ
22  MATTER.

23      MR. WALLACH:  DO YOU WANT THEM OUT?

24      THE COURT:  NOT QUITE YET.  YOU STILL WANT TO MAKE
25  YOUR OBJECTIONS, RIGHT?

26      MR. WALLACH:  YES, I DO, YOUR HONOR.

27      THE COURT:  GOOD MORNING, COUNSEL.  APPEARANCES,
28  PLEASE.

1    MR. WALLACH:  IAN WALLACH, FELDMAN & WALLACH, ICDA

2  FOR MR. WALKER WHO IS PRESENT, DETAINED, NOT HERE RIGHT

3  NOW.

4    MS. YOUNG:  GOOD MORNING, YOUR HONOR.  FRANCES YOUNG

5  APPEARING ON BEHALF OF THE PEOPLE.

6    MR. SARIO:  ALEX SARIO, DEPUTY ALTERNATE PUBLIC

7  DEFENDER FOR MS. DIAZ.

8    THE COURT:  ALL RIGHT.  AND COUNSEL YOU WANT TO

9  STATE YOUR OBJECTIONS FOR THE RECORD TO THE PRESENCE OF THE

10  MEDIA?

11    MR. WALLACH:  WE ARE JUST MAKING A GENERAL OBJECTION

12  TO THE PRESENCE OF THE MEDIA IN THIS MATTER ON BEHALF OF

13  MR. WALKER.

14    MR. SARIO:  YOUR HONOR, THERE ARE SOME ID ISSUES

15  RELATED TO MS. DIAZ'S INVOLVEMENT IN THIS CASE.  AND

16  BECAUSE OF THOSE ID ISSUES AND ARGUMENT AT SIDEBAR, OUR

17  REQUEST TO HAVE THE MEDIA AND ANY BROADCAST OF HER FACE

18  EXCLUDED.

19    THE COURT:  AND THE PEOPLE TAKE NO OBJECTION, I

20  UNDERSTAND.

21    MS. YOUNG:  WE'RE NOT TAKING A POSITION ON THE MEDIA

22  REQUEST, YOUR HONOR.  SUBMITTED.

23    THE COURT:  AND BASED ON THE FACTORS IN LOCAL RULE

24  1.510 AS REFLECTED IN THE ORDER SUBMITTED BY THE MEDIA, THE

25  OBJECTIONS ARE RESPECTFULLY OVERRULED.

26    MR. WALLACH:  YOUR HONOR, YOU WERE GONNA ADDRESS THE

27  MICROPHONE ISSUE.  DO YOU WANT TO DO THAT NOW?

28    THE COURT:  WE'LL DO THAT AFTERWARDS.

1        MR. WALLACH:  OKAY.  THANK YOU.

2        THE COURT:  TODAY WE'RE 8 OF 10.  I UNDERSTAND WE'RE

3   GOING TO PUT THE MATTER OVER BECAUSE THERE ARE DISCOVERY

4   ISSUES AND A POTENTIAL MOTION REGARDING BAIL TO MAY 29 AS 0

5   OF 15; IS THAT CORRECT?

6        MR. WALLACH:  THAT IS CORRECT, YOUR HONOR.

7        MR. SARIO:  THAT'S CORRECT.

8        THE COURT:  AND MR. WALKER AND MS. DIAZ, EACH ONE OF

9   YOU HAS A RIGHT TO HAVE YOUR PRELIMINARY HEARING TODAY OR

10  WITHIN THE NEXT TWO COURT DAYS, AND ALSO WITHIN 60 CALENDAR

11  DAYS OF YOUR ARRAIGNMENT.  DO EACH ONE OF YOU UNDERSTAND

12  THOSE RIGHTS AND AGREE THAT WE CAN CONTINUE YOUR

13  PRELIMINARY HEARING TO MAY 29TH AND THAT IT WOULD TAKE

14  PLACE WITHIN 15 COURT DAYS OF THAT DAY?

15       DEFENDANT WALKER:  YES.

16       DEFENDANT DIAZ:  YES.

17       THE COURT:  COUNSEL JOIN AS TO EACH DEFENDANT?

18       MR. WALLACH:  YES.

19       MR. SARIO:  YES.

20       THE COURT:  THANK YOU.  THAT'LL BE THE ORDER.

21       MR. WALLACH:  YOUR HONOR.  LET ME GIVE NOTICE OF THE

22  MOTION TO REDUCE BAIL, WRITTEN MOTION TO FOLLOW.

23       MR. SARIO:  YOUR HONOR, I DID MAKE A WRITTEN

24  REQUEST, FORMAL DISCOVERY REQUEST AND I GAVE THAT TO

25  MS. YOUNG THIS MORNING JUST FOR THE RECORD.  THANK YOU.

26       MR. WALLACH:  IF I CAN JOIN THAT REQUEST, THOUGH,

27  I'LL SUPPLEMENT IT ON BEHALF OF MR. WALKER.

28       MS. YOUNG:  OF COURSE.

5

1  THE COURT:  YES.

2  ALSO, I DID MENTION TO COUNSEL, THAT

3  UNBEKNOWNST TO THE COURT THERE WAS A MICROPHONE PLACED ON

4  THE BENCH WHICH I AM TOLD BY THE MEDIA DID NOT RECORD ANY

5  SIDEBAR COMMENTS JUST BETWEEN THE COURT AND COUNSEL.  TO

6  MAKE SURE THAT THAT IS INDEED THE CASE, ALL COUNSEL AND I

7  WILL MEET IN CHAMBERS AND REVIEW THE VIDEO.

8  BUT I WOULD LIKE TO STATE FOR THE RECORD

9  THAT I WAS NOT AWARE OF THIS MICROPHONE.  HAD I BEEN AWARE,

10  I WOULD HAVE MADE SURE THAT IT WAS EITHER REMOVED FROM THE

11  BENCH WHEN WE HAVE SIDEBAR CONFERENCE OR TURNED OFF OR

12  BOTH.  THIS WILL NOT HAPPEN AGAIN.

13  ANYTHING ELSE?

14  MR. WALLACH:  YES, YOUR HONOR, THIS WILL BE THE

15  BASIS OF A STANDING OBJECTION AND THE REPEATED OBJECTION

16  RELATED TO THE PRESENCE OF THE MEDIA.  THIS IS ABSOLUTELY

17  OFFENSIVE.

18  MR. SARIO:  AND DEFENSE FOR MS. DIAZ ALSO JOINS IN

19  THAT.

20  MS. YOUNG:  YOUR HONOR, PENAL CODE SECTION, I

21  BELIEVE IT'S EITHER 632 OR 647(K)(2) OR (K)(3), MAKES IT A

22  MISDEMEANOR TO SURREPTITIOUSLY RECORD EITHER VISUALLY OR IN

23  AUDIO FORMAT ANYONE'S PRIVATE CONVERSATION, WHICH,

24  OBVIOUSLY AN ATTORNEY SIDEBAR WITH THE COURT IS.

25  SO, AT THIS TIME THE PEOPLE WOULD

26  RESPECTFULLY ASK THAT THE COURT POSSIBLY CONSIDER

27  CONFISCATING THAT PARTICULAR DEVICE.

28  THE COURT:  I'M NOT GOING TO ADDRESS THAT, BUT I

1   WOULD LIKE TO SAY THAT -- I DON'T KNOW IF THIS IS STANDARD

2   PRACTICE, BUT I WANT TO NOTE THAT WE HAVE OUR OWN

3   MICROPHONES.  IF THE MEDIA CANNOT FOR SOME REASON HEAR THE

4   COURT SPEAKING, WE CAN USE OUR OWN MICROPHONES.  AND I

5   DON'T KNOW WHY IT WAS PLACED HERE AT THE BENCH, BUT THE

6   POTENTIAL FOR VIOLATING WHETHER KNOWINGLY OR UNKNOWINGLY

7   THE LAW IS JUST SO GREAT, I WOULD RECOMMEND RESPECTFULLY

8   THAT THIS NOT BE DONE IN THE FUTURE.

9        MEDIA REPRESENTATIVE:  YES, SIR.

10       THE COURT:  THANK YOU.

11

12            (OFF-THE-RECORD DISCUSSION.)

13

14       THE COURT:  BACK ON THE RECORD IN THE WALKER DIAZ

15   MATTER.  ALL COUNSEL ARE PRESENT.  THE COURT'S JUST BEEN

16   MADE AWARE THAT THERE WAS UNBEKNOWNST TO COUNSEL AND THE

17   COURT A MICROPHONE PLACED AT COUNSEL TABLE.  COUNSEL HAS A

18   CONCERN THAT AUDIO MAY HAVE BEEN RECORDED OF THEIR

19   DISCUSSIONS, WHICH SHOULD NOT HAVE BEEN RECORDED AT COUNSEL

20   TABLE.

21       MS. YOUNG:  IN LIGHT OF THAT, YOUR HONOR, AND

22   BECAUSE IT IS ESSENTIALLY TWO SEPARATE INSTANCES OF

23   CRIMINAL CONDUCT, WE WOULD ASK THAT THE COURT CONFISCATE

24   BOTH PIECES OF EQUIPMENT, INQUIRE WHETHER THERE ARE ANY

25   OTHER PIECES OF EQUIPMENT IN THIS COURTROOM BESIDES THOSE

26   TWO.

27       THE COURT:  IS MICROPHONE STILL AT COUNSEL TABLE?

28       MEDIA REPRESENTATIVE:  NO, I REMOVED IT.

1    THE COURT:  DO YOU HAVE ANY OTHER MICROPHONES?

2    MS. YOUNG:  IT APPEARS IT WAS PLACED IN A WAY THAT

3  IT WASN'T APPARENT.  SO, BASED ON THAT, I DON'T BELIEVE

4  THIS PARTICULAR ORGANIZATION -- IF YOU DON'T CONFISCATE THE

5  DEVICES, I THINK WE'D ALMOST BE, NOT CONDONING IT, BUT IT

6  WOULD BE EVIDENCE OF A CRIME, SO THAT'S THE BASIS FOR MY

7  REQUEST.

8    I REALIZE IT'S AN UNUSUAL REQUEST, BUT I

9  ALSO, IN 16 YEARS, HAVE NEVER -- AND I'VE DONE MANY MEDIA

10  CASES, NEVER HAD A MEDIA ORGANIZATION SURREPTITIOUSLY

11  RECORD A BENCH OFFICER, A D.A. AND TWO DEFENSE ATTORNEYS.

12    MR. WALLACH:  I'M VERY THANKFUL THAT THE D.A.'S

13  MAKING THIS RECORD.  I, AGAIN, JOIN IN HER REQUEST, OBJECT

14  TO THEIR PRESENCE AND AM DEEPLY, DEEPLY CONCERNED.  THERE

15  WERE CONVERSATIONS BETWEEN ME AND CO-COUNSEL.  THERE WERE

16  MAKING MY OWN NOTES.  ALL OF WHICH WOULD BE PROTECTED UNDER

17  THE ATTORNEY/CLIENT PRIVILEGE IN THIS CASE WAS WITH IN I

18  WAY SHAPE OR FORM RECORDED, THAT'S JUST TREMENDOUSLY

19  DETRIMENTAL BOTH TO MY CLIENT'S DEFENSE AND TO THE

20  INTEGRITY OF COURT.

21    THE COURT:  I'M GOING TO ASK THE REPRESENTATIVE FROM

22  THE MEDIA, THAT IS TMZ, TO STATE HIS NAME FOR THE RECORD.

23    MEDIA REPRESENTATIVE:  MY NAME IS CHRISTOPHER

24  MANIVONG.

25    THE COURT:  SPELL YOUR FIRST AND LAST NAME.

26    MEDIA REPRESENTATIVE:  CHRISTOPHER,

27  C-H-R-I-S-T-O-P-H-E-R.  LAST NAME IS MANIVONG, M-A-N-I-V,

28  AS IN VICTOR, O-N-G.

8

1      MS. YOUNG:  COULD THE COURT ALSO INQUIRE AS A DATE
2  OF BIRTH, PLEASE?
3      MEDIA REPRESENTATIVE:  OCTOBER 4TH, 1985.
4      THE COURT:  ANY OTHER SUGGESTIONS OR COMMENTS FROM
5  COUNSEL?
6      MR. SARIO:  YOUR HONOR, I WILL ALSO BE JOINING IN
7  THE REQUEST.  I WOULD ADD, MAYBE POSSIBLY FURTHER, THAT ANY
8  INFORMATION GAINED FROM ANY CONVERSATIONS LISTED UPON THAT
9  THE COURT ORDER, NONE OF THAT INFORMATION BE BROADCAST OR
10  RELAYED TO ANY OTHER INDIVIDUALS.  THERE WERE PRIVATE
11  CONVERSATIONS BETWEEN ALL THE PARTIES HERE AND WOULD DAMAGE
12  MY CLIENTS' DEFENSE IF ANY OF THAT INFORMATION GOT OUT.
13      MS. YOUNG:  I WOULD JOIN IN THAT REQUEST, YOUR
14  HONOR.
15      MR. WALLACH:  I WOULD JOIN IN IT AS WELL.  AND, YOUR
16  HONOR, AND EVEN THE SOLUTION THAT WE'RE FINDING RIGHT NOW
17  IS TO HAVE US ALL TOGETHER LISTENING, EVEN THE SOLUTION TO
18  THIS PROBLEM IS GOING TO BE DAMAGING TO THE DEFENSE.
19  THERE'S TIMES, FORTUNATELY THIS WASN'T ONE OF THEM, WHERE
20  I'VE DISAGREED WITH PEOPLE ON THE BENCH OR DISAGREED WITH
21  THE PEOPLE ACROSS THE TABLE AND SAID THINGS THAT I HAD I
22  KNOWN WERE BEING RECORDED, COULD HAVE COMPROMISED ME OR MY
23  ABILITY TO REPRESENT THE COURT.
24      SO, I DON'T KNOW, I GUESS IN A PERFECT WORLD
25  WE EACH INDEPENDENTLY GET TO LISTEN TO THIS SEPARATELY.  I
26  DON'T THINK THAT'S GOING TO HAPPEN.  BUT I THINK AN
27  ADDITIONAL REASON THAT I DON'T THINK THIS SHOULD BE ALLOWED
28  TO HAPPEN AGAIN.

1    THE COURT:  IS THERE ANY REASON, MR. MANIVONG, WHY

2  THE COURT SHOULD NOT ORDER THAT ANY AUDIO THAT MAY HAVE

3  BEEN RECORDED AT SIDEBAR OR AT COUNSEL TABLE WHEN THIS CASE

4  WAS NOT CALLED AND OFFICIALLY ON THE RECORD, WHY ANY OF

5  THOSE RECORDINGS SHOULD NOT BE PROHIBITED FROM BEING

6  BROADCAST IN ANY WAY?

7    MEDIA REPRESENTATIVE:  YOUR HONOR, I CAN SAY IN

8  CONFIDENCE THAT NOTHING WAS RECORDED WHEN YOU GUYS WENT ON

9  SIDEBAR.  PROCEDURE FOR MANY COURTS THAT I HAVE RECORDED,

10  WHENEVER EVERYONE GOES UP TO THE SIDEBAR, AUDIO GOES OFF,

11  NOTHING IS RECORDED, I'VE DEALT WITH P.I.O. OFFICE ON THIS

12  MANY TIMES WITH OTHER COURT HEARINGS THAT I HAVE

13  BROADCASTED BEFORE.

14    THE COURT:  WHAT ABOUT AT COUNSEL TABLE?

15    MEDIA REPRESENTATIVE:  EVERYTHING WAS LOW.

16    MR. WALLACH:  WELL --

17    MEDIA REPRESENTATIVE:  NOTHING COULD BE HEARD THAT

18  WAS GOING ON.  IT WASN'T UNTIL -- I'M NOT ALLOWED TO TURN

19  UP AUDIO AND RECORD UNTIL HE BRINGS UP THE CASE AND SAYS

20  THAT IT'S ON RECORD.

21    MR. WALLACH:  BUT THERE IS INFORMATION THAT -- THERE

22  IS DATA THAT COULD TURN INTO THE SUBSTANCE OF OUR

23  CONVERSATION THAT SOMEONE COULD PROCESS AND PLAY AND LEARN

24  WHAT WAS SAID, CORRECT?

25    MEDIA REPRESENTATIVE:  UNFORTUNATELY DUE TO LAW

26  WE'RE NOT ALLOWED TO BROADCAST OUT.  IF IT'S NOT ON

27  RECORD --

28

1    MR. WALLACH:  THAT'S NOT MY QUESTION.  MY QUESTION

2  IS DOES IT EXIST, DOES THE DATA EXIST?  I BELIEVE THE

3  ANSWER IS, YES, IT DOES.

4    MEDIA REPRESENTATIVE:  NOT AUDIO.

5    MR. WALLACH:  SO, THERE'S NO AUDIO DATA.  IT WOULD

6  BE COMPLETELY IMPOSSIBLE FOR SOMEONE TO TAKE WHAT YOU HAVE

7  AND DISCERN WHAT WAS SAID?

8    MEDIA REPRESENTATIVE:  CORRECT.

9    MS. YOUNG:  TO PROTECT THE COURT, YOUR HONOR, IF I

10  MAY.  BECAUSE IT'S THE ACT OF PLACING THE DEVICES THAT IS

11  THE CRIMINAL CONDUCT, WHETHER OR NOT IT'S SUCCESSFUL OR

12  NOT, MY RECOMMENDATION WOULD BE THAT WE TURN -- YOU

13  CONFISCATE BOTH DEVICES, TURN THEM OVER TO THE SHERIFF'S

14  DEPARTMENT, ALLOW THE SHERIFF'S DEPARTMENT TO CONDUCT THEIR

15  OWN INVESTIGATION AS TO WHETHER OR NOT ANYTHING WAS

16  COMPROMISED, AND IF THEY COULD REPORT BACK TO COURT THAT

17  WOULD ALLEVIATE BOTH COUNSEL, ON THE DEFENSE AND THE D.A.,

18  FROM HAVING TO FIND OUT IF -- THAT WOULD PROTECT OUR

19  ABILITY TO DO OUR JOBS.

20    THE FACTS THAT THERE ARE RECORDING DEVICES

21  THAT ARE OBVIOUSLY NOT VIDEO CAMERAS, THEY'RE SUM AND TOTAL

22  PURPOSE IS TO PICK UP AUDIO AND WHETHER IT WAS SUCCESSFUL

23  OR NOT, I THINK IS NOT THE POINT HERE.  THE POINT IS THAT

24  THEY WERE CAPTURED.  SO THAT WOULD BE MY RECOMMENDATION TO

25  PROTECT THE INTEGRITY OF THIS CASE.  AND IF MAYBE, PERHAPS,

26  THE SHERIFF'S DEPARTMENT COULD EVEN POSSIBLY MAYBE DO THAT

27  BY THE TIME WE COME BACK, THAT WOULD ALLOW ALL SIDES TO

28  KNOW EXACTLY WHAT HAPPENED THIS MORNING.

1        MR. WALLACH:  I WOULD JUST ADD TO THAT, TOO, I'D

2   RATHER HAVE SUBJECTIVE DETERMINATION OF WHETHER THE

3   INFORMATION IS DAMAGING BE LEFT TO COUNSEL, BUT I WOULD

4   LIKE THEM TO KNOW IF THERE WAS ANY INFORMATION THERE.

5        THE COURT:  THE COURT HAD EARLIER PROPOSED THAT ALL

6   COUNSEL AND THE COURT GO IN CHAMBERS AND LISTEN TO THE

7   TAPE, SEE IF THERE IS ANY AUDIO.  IS EVERYBODY STILL IN

8   AGREEMENT THAT THAT SHOULD BE DONE?

9        MR. WALLACH:  YES.

10        MS. YOUNG:  YES, YOUR HONOR.

11        MR. SARIO:  YES.

12        THE COURT:  OFF THE RECORD.

13

14             (OFF-THE-RECORD DISCUSSION.)

15

16        THE COURT:  RECALLING THE WALKER DIAZ MATTER.  ALL

17   COUNSEL ARE PRESENT.  AND MR. SARIO, DO YOU WANT TO STATE

18   AN OBJECTION FOR THE RECORD.

19        MR. SARIO:  YES, ON BEHALF OF MS. DIAZ, OUR REQUEST

20   WOULD BE THAT THE TAPE BE CONFISCATED AT THIS TIME BASED ON

21   THE RECORDINGS AND THE AUDIO RECORDINGS THAT WOULD DAMAGE

22   ANY DEFENSE FOR MS. DIAZ IN THE FUTURE.  THANK YOU.

23        THE COURT:  MR. WALLACH?

24        MS. YOUNG:  MAY I BE EXCUSED?

25        THE COURT:  YES.

26        MR. WALLACH:  ON BEHALF MR. WALKER, YOUR HONOR, I

27   WOULD JOIN IN THAT ALSO, AND NOT JUST HAVING THE TAPE BE

28   CONFISCATED, BUT ANY ENTITY THAT ACQUIRED THE INFORMATION

1  THAT IS ON THAT TAPE BE ORDERED NOT TO DISCLOSE IT OR AT

2  LEAST IF THEY DISCLOSE IT THAT BEING TAKEN INTO

3  CONSIDERATION RELATING TO ANY FUTURE PRESENCE THE MEDIA.

4     MOREOVER, I'M DEEPLY CONCERNED WITH WHAT I

5  SAW ON THE VIDEO, WHICH IS -- AND I'M NOT SURE IF IT WAS

6  WHILE WE WERE ON THE RECORD OR OFF, BUT IT WAS A CLOSE UP

7  SHOT FOR SOME TIME OF MR. WALKER WHO DOESN'T WANT HIS

8  PRESENCE KNOWN AND WAS -- WHEN WE WERE ON THE RECORD LATER

9  THEN BEHIND ME.  IF THOSE TWO SHOTS ARE BROADCAST SIDE BY

10  SIDE, IT WOULD GIVE THE ILLUSION OF POTENTIAL FLIGHT.  EVEN

11  THE JURY INSTRUCTION SAYS THAT, EVEN THAT ALONE CAN CREATE

12  A SENSE OF GUILT.  I THINK THOSE TWO IMAGES, IF PUT

13  TOGETHER AND DISSEMINATED TO THE PUBLIC TOGETHER, GIVE A

14  COMPLETELY FALSE IMPRESSION OF MR. WALKER AND ONE THAT

15  WOULD BE DEEPLY DAMAGING TO HIS DEFENSE.

16     SO, IN THE EVENT THAT THOSE TWO IMAGES ARE

17  BROADCAST TOGETHER OR EVEN WORSE, JUST THE FIRST IMAGE OF

18  THE LONG CLOSE UP OF MR. WALKER'S FACE WHILE HE WAS

19  STANDING HERE BE BROADCAST, I THINK THAT'S EXCEPTIONALLY

20  DETRIMENTAL.  I WOULD ASK THE COURT TO DO WHAT IT CAN TO

21  MAKE THAT NOT TAKE PLACE.  AND IF IT DOES TAKE PLACE, TO

22  TAKE THAT IN CONSIDERATION IN DETERMINING WHETHER THE COURT

23  WILL GRANT OR OVERRULE THE FUTURE OBJECTIONS TO THE MEDIA,

24  SPECIFICALLY, TMZ IN THIS MATTER.

25    THE COURT:  ANYTHING TO ADD?

26    MS. YOUNG:  JUST VERY BRIEFLY.  I THINK TO PROTECT

27  THE INTEGRITY OF THE COURT, ONCE YOU RULED EVERYTHING ON

28  THE RECORD WAS FAIR GAME.  EVERYTHING THAT TOOK PLACE PRIOR

1 TO THIS COURT'S RULING, I THINK ALL SIDES AGREE, WAS
2 ILLEGAL AND UNDERHANDED, AND BASED ON THAT I WOULD RENEW MY
3 REQUEST THAT EVERYTHING BE CONFISCATED AND THAT EVERYTHING
4 PRIOR TO YOUR RULING BE DEEMED ILLEGAL BASED ON THE PENAL
5 CODE SECTION THAT I PREVIOUSLY CITED.  TMZ WOULD HAVE
6 EVERYTHING AFTER YOU RULED.  THEY'RE FIRST AMENDMENT RIGHTS
7 WOULD BE PROTECTED WITH RESPECT TO WHAT WAS LEGALLY WITHIN
8 THEIR PURVIEW, AND EVERYTHING THAT WAS NOT WITHIN THEIR
9 PURVIEW, I BELIEVE SHOULD NOT.  I AGREE WITH COUNSEL AND
10 I'LL SUBMIT IT.
11      MR. WALLACH:  I WOULD DEFINITELY JOIN IN THAT AND I
12 WOULD JUST SAY THAT -- I WOULD CLARIFY IT'S AFTER THE
13 RULING, NOT DURING.  I DON'T KNOW IF THE SHOT OF MR. WALKER
14 WAS DURING THE RULING OR BEFORE.  BUT AFTER THE RULING I
15 WAS PROTECTING HIM AFTER THAT POINT.
16      THE COURT:  FOR THE RECORD, ALL COUNSEL AND THE
17 COURT DID HAVE A CHANCE TO REVIEW AND LISTEN TO THE VIDEO
18 AND AUDIO RECORDING BY TMZ IN CHAMBERS.  AND THERE WAS NO
19 DISCERNIBLE VOICES THAT WERE AUDIO RECORDED, AT LEAST WITH
20 REGARD TO THE SIDEBAR CONFERENCE BETWEEN THE COURT AND
21 COUNSEL.
22      WITH REGARD TO THE MICROPHONE AT COUNSEL
23 TABLE THERE WERE ALSO NO RECORDINGS OF DISCUSSIONS BETWEEN
24 COUNSEL IN THIS CASE ON THE TAPE.  THERE IS A BRIEF MOMENT
25 WHEN MR. WALKER WAS SHOWN ON THE TAPE JUST PRIOR TO THE
26 COURT RULING THAT THE MEDIA COULD BE PRESENT IN THE
27 COURTROOM.  AS SOON AS THE COURT REALIZED THAT THAT WAS THE
28 CASE AND MR. WALKER WAS OUT IN THE COURTROOM, IMMEDIATELY

14

1  BEFORE THE COURT RULED, I HAD ASKED THAT THE BAILIFFS PLACE

2  HIM BACK IN THE LOCKUP.  AND AFTER THE COURT RULED ALLOWING

3  THE MEDIA TO BE PRESENT AND RECORD, THEN MR. WALKER WAS

4  BROUGHT OUT.

5           IN ANY EVENT, IT WOULD HAVE BEEN BETTER

6  PRACTICE IF MR. WALKER HAD NOT BEEN BROUGHT OUT UNTIL THE

7  COURT HAD ACTUALLY MADE THE RULING.  I DO NOT BELIEVE THAT

8  THAT WAS INTENTIONAL, BUT IN ANY EVENT YOUR OBJECTIONS ARE

9  NOTED FOR THE RECORD.

10          MS. YOUNG:  THANK YOU.

11          THE COURT:  THANK YOU.

12

13          (CONCLUSION OF PROCEEDINGS.)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      SUPERIOR COURT OF THE STATE OF CALIFORNIA

2          FOR THE COUNTY OF LOS ANGELES

3   DEPARTMENT 33          HON. RAY G. JURADO, JUDGE

4

5   PEOPLE OF THE STATE OF CALIFORNIA,   )
                                          )
6              PLAINTIFF,                 )
                                          )
7        VS.                              )  NO. BA397254
                                          )  REPORTER'S
8   ALPHA WALKER(01) AND                  )
    TAMARA E. DIAZ(02),                   )  CERTIFICATE
9                                         )
               DEFENDANT.                 )
10   _____ )

11

12

13      I, YOLANDA HUFF, OFFICIAL REPORTER OF THE SUPERIOR

14   COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY OF LOS

15   ANGELES, DO HEREBY CERTIFY THAT THE FOREGOING PAGES 1

16   THROUGH 14 COMPRISE A FULL, TRUE AND CORRECT TRANSCRIPT

17   OF THE PROCEEDINGS TAKEN IN THE MATTER IN THE

18   ABOVE-ENTITLED CAUSE ON MAY 16, 2012.

19

20          DATED THIS 22ND DAY OF MAY 2012.

21

22

23

24

     YOLANDA HUFF, CSR NO. 12570
25   OFFICIAL COURT REPORTER

26

27

28

# EXHIBIT B

**From:** "Neubauer, Elisabeth (*IC)" <Elisabeth.Neubauer@tmz.com>
**Subject:** RE: Memorializing our conversation of May 21, 2012 re: TMZ's presence and recording during the May 16, 2012 hearing
**Date:** May 23, 2012 10:49:32 AM PDT
**To:** Ian Michael Wallach <ian@feldmanwallach.com>
**Cc:** Frances Young <fyoung@da.lacounty.gov>, Alexander Sario <asario@apd.lacounty.gov>

---

Dear Mr. Wallach –

I have received and reviewed your letter, and I am surprised and dismayed by the inaccuracies and mischaracterizations of our conversation in your correspondence. When we spoke, you indicated you would be sending us a letter related to the Alpha Walker hearing for our consideration and vaguely raised some concerns you had. We had a friendly dialogue during which I expressed my doubts about your positions and recounting of the events at the hearing. During our conversation you indicated you would send me detailed correspondence setting forth your position. I made no promises whatsoever during our conversation, and frankly I am appalled that you would go to such lengths to put words into my mouth. That said, please know that TMZ will act consistent with its legal obligations.

Sincerely,
Elisabeth Neubauer

----

**Elisabeth J. Neubauer**
Senior Counsel, TMZ
[t]: 818-972-8499
[f]: 818-972-8050
Elisabeth.Neubauer@tmz.com

---

**From:** Ian Michael Wallach [mailto:ian@feldmanwallach.com]
**Sent:** Wednesday, May 23, 2012 9:24 AM
**To:** Neubauer, Elisabeth (*IC)
**Cc:** Frances Young; Alexander Sario
**Subject:** Memorializing our conversation of May 21, 2012 re: TMZ's presence and recording during the May 16, 2012 hearing

Dear Counsel,

Please see the attached letter. Should you have any questions or comments, do not hesitate to call.

Sincerely,

Ian Wallach

Feldman & Wallach
606 Venice Blvd., Suite C, Venice, CA  90291
Tel: 310.577.2001  ·  Fax: 310.564.2004
www.feldmanwallach.com

PLEASE NOTE: This message, including any attachments, may include privileged, confidential, and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

# FELDMAN & WALLACH

606 Venice Boulevard, Suite C, Venice, CA 90291

Tel: 310.577.2001 • Fax: 310.564.2004 • Web: www.feldmanwallach.com

Jason Feldman*                                                          Ian Wallach**

jason@feldmanwallach.com                              ian@feldmanwallach.com

May 23, 2012

Elisabeth Neubauer
Senior Counsel, TMZ
8033 West Sunset Blvd., Suite 875
Los Angeles, CA 90046

*(via U.S. Mail, with electronic copy to Elisabeth.Neubauer@tmz.com)*

Re:   Memorializing Our Conversation Regarding TMZ's Recording Of May 16, 2012
      In *People v. Alpha Walker*, Case No. BA397254, Dep't. 33

Dear Counsel Neubauer,

I am counsel to Alpha Walker in the above-captioned action. This letter shall memorialize our conversation of May 21, 2012, and set forth what transpired in Court on May 16, 2012. I understand that our perception of the events of May 16, 2012 may differ. However, please inform me -- in writing -- if I am inaccurately memorializing our conversation of May 21, 2012.

Per our conversation of May 21, 2012, you have represented the following:

- TMZ Productions, Inc., EHM Productions Inc., and any affiliate or associate of either entity (collectively referred to herein as "TMZ") will destroy all audio or video recordings of:

  o   Counsel and the Court during sidebar conversations; and

  o   Conversations among counsel made at counsel table by anyone, including counsel for the Defense and counsel for the Prosecution, when the matter was not being heard on the record.

- TMZ has not enhanced -- or participated in the enhancement of -- conversations between counsel, or between counsel and the Court, recorded when the matter was not on the record or conversations made at sidebar, in order to make these improperly recorded conversations (which are presently discernible) even moreso; and

* admitted in California                              ** admitted in California and New York

Feldman & Wallach
Page 2 of 3

- TMZ will destroy all footage taken prior to the Court's hearing on the motion related to TMZ's presence and recording in the Courtroom, including, but not limited to, any footage of Alpha Walker, and TMZ will not broadcast this footage or allow it to be broadcasted.

- **IN SUM, THE ONLY AUDIO OR VIDEO FOOTAGE THAT TMZ WILL LISTEN TO OR BROADCAST WILL BE THAT TAKEN *AFTER* THE COURT ADDRESSED THE MOTION RELATED TO TMZ'S PRESENCE AND RECORDING, WHEN THE MATTER WAS BEING HEARD ON THE RECORD.**

Please let me know if this inaccurately reflects your representations to me in any way.

I understand that you were not personally present during the hearing on May 16, 2012 in Department 33. I also acknowledge that our perceptions of the events that took place may differ. Below is mine:

TMZ brought a motion for an order to film and record during the hearing. Deputy Alternate Public Defender Alexander Sario ("DAPD Sario"), counsel to co-defendant Diaz, and I objected to TMZ's presence and recording. Deputy District Attorney Frances Young ("DDA Young") stated that her office took no position.

Conferences between the Court and counsel took place at sidebar. These conferences are privileged. Discussions related to the matter took place between DAPD Sario and myself at counsel table. Such discussions are privileged and confidential. Conferences also took place between DDA Young and her colleagues, which are also privileged and confidential.

Then the motion related to the presence of the media was heard. The Court overruled the defense counsels' objections to the presence and recording by TMZ. The defendants were then brought out into the Courtroom and the matter was continued.

Then Judge Jerudo announced that he had discovered an active microphone that had been placed on the Judge's Bench. All of the sidebar conversations had been recorded by TMZ. Neither the Court nor counsel had been advised that their conversations were being recorded by TMZ. The Judge admonished the TMZ cameraperson.

Then it was learned that two other microphones had been placed out of view, behind books, on counsel table -- capturing all conversations between myself and DAPD Sario. These privileged conversations were highly sensitive. Privileged conversations between DDA Young and her colleagues had been recorded as well. Also recorded, without knowledge, were all conversations between counsel and colleagues.

DDA Young asked for the camera to be confiscated and stated that a criminal action against TMZ would possibly be filed (the confiscation did not occur as -- we would later learn -- the audio and video data had already been transmitted to TMZ's headquarters).

Feldman & Wallach
Page 3 of 3

The cameraman claimed all conversations were recorded at a very low volume.  The Judge then invited counsel into chambers to listen and see the recording.  Our recorded conversations were largely understandable (and an enhancement would make each word of each conversation clear).

It was then when all parties learned that the audio and video recordings had been simultaneously beamed to TMZ's headquarters.

Additionally we learned that -- prior to the Judge's ruling on the objections to TMZ's presence and filming -- my client, who wants to maintain his privacy, had been accidentally brought out by the Bailiff and then removed.  And during this brief minute -- prior to the Court's ruling giving TMZ permission to be present and film -- TMZ's cameraman filmed a carefully framed shot of my client, without giving notice to anyone.

All of the above was put on the record.  I understand that a transcript of the entire proceedings will be available on May 29, 2012.  When you read the transcript, you may better grasp how disturbing and unlawful this conduct was.

My client deserves the same amount of privacy as anyone represented by counsel.  And I should not need to be concerned with the prospect of having my privileged and confidential conversations recorded without my knowledge, as such recordings, and even the fear of such recordings, compromises my capacity to defend my client.  TMZ's conduct on May 16, 2012 has caused my client substantial emotional distress and made me very concerned about the improperly recorded information and TMZ's future presence in the Courtroom.

Mr. Walker expressly reserves any rights he may have in law or equity related to the events described above.

Please call me if you wish to discuss this matter further.

Sincerely,

Ian Wallach

IW:cc

Encs.

cc:   Deputy District Attorney Frances Young (*via electronic mail*)
      Deputy Alternate Public Defender Alexander Sario  (*via electronic mail*)

3

# EXHIBIT C

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| ALPHA WALKER,<br><br>     **Plaintiff,**<br><br>     v.<br><br>TMZ PRODUCTIONS, INC., EHM<br>PRODUCTIONS, INC., TIME<br>WARNER INC., CHRISTOPHER<br>MANIVONG, AND DOES 1-50,<br>inclusive,<br><br>     **Defendants.** | CASE NO.<br><br>**[PROPOSED] ORDER GRANTING<br>PRELIMINARY INJUNCTION** |
| --- | --- |

GOOD CAUSE HAVING BEEN SHOWN:

**IT IS HEREBY ORDERED THAT** defendants TMZ PRODUCTIONS, INC., EHM PRODUCTIONS, INC., TIME WARNER INC., CHRISTOPHER MANIVONG ("Defendants") are hereby enjoined from:

    a. recording anything during a Court proceeding other than words spoken and images available to be captured:

        i. after Defendants have obtained a court order allowing them to do so; and

        ii. only when on the record;

    b. using microphones in connection with the recording and transmission of Courtroom proceedings unless those microphones are prominently displayed;

    c. using cameras unless, to the satisfaction of this Court or the Court that issued the order granting Defendants permission to record, the cameras have alerting devices, such as lights, that make clear to attorneys, judges, or others in the courtroom that the camera is recording (provided to this Court's satisfaction, or the satisfaction of the Court where the

recording and broadcasting is taking place, that the alerting devices are not disturbing and in compliance with Cal. Rule of Court, Rule 1.150(e)(8)(B));

d.  using microphones unless, to the satisfaction of this Court or the Court that issued the order granting Defendants permission to record, the microphones have alerting devices, such as lights, that make clear to attorneys, judges, or others in the courtroom when the microphone is recording (provided to this Court's satisfaction, or the satisfaction of the Court where the recording and broadcasting is taking place, that the alerting devices are not disturbing and in compliance with Cal. Rule of Court, Rule 1.150(e)(8)(B));

e.  simultaneously transmitting to anywhere any data recorded or captured during a Courtroom proceeding when the matter is not being heard on the record; and

f.  using any camera or other device capable of transmitting data captured during Courtroom proceedings unless that camera or device is both:

    i.  approved by this Court or the Court issuing the order allowing Defendants to be present and record during Courtroom proceedings; and

    ii.  fitted with alerting devices, such as lights, that make clear to attorneys, judges, or others in the courtroom that the device is transmitting (provided to this Court's satisfaction, or the satisfaction of the Court where the recording and broadcasting is taking place, that the alerting devices are not disturbing and in compliance with Cal. Rule of Court, Rule 1.150(e)(8)(B)).

Dated: _____        _____
                                Honorable Judge

[PROPOSED] ORDER

Respectfully submitted,

Ian Wallach, SBN 237849
FELDMAN & WALLACH
606 Venice Blvd., Suite C
Venice, CA 90291
Telephone: (310) 577-2001
Fax: (310) 564-2004
ian@feldmanwallach.com

Attorneys for Plaintiff,
ALPHA WALKER

3

[PROPOSED] ORDER

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHA WALKER,<br><br>      **Plaintiff,**<br><br>      **v.**<br><br>TMZ PRODUCTIONS, INC., EHM<br>PRODUCTIONS, INC., TIME<br>WARNER INC., CHRISTOPHER<br>MANIVONG, AND DOES 1-50,<br>inclusive,<br><br>      **Defendants.** | **CASE NO.**<br><br>**[PROPOSED] ORDER GRANTING<br>PERMANENT INJUNCTION** |

GOOD CAUSE HAVING BEEN SHOWN:

**IT IS HEREBY ORDERED THAT** the Defendants TMZ PRODUCTIONS, INC., EHM

PRODUCTIONS, INC., TIME WARNER INC., and CHRISTOPHER MANIVONG

("Defendants") are, until further Court Order, hereby enjoined from:

   a.  recording anything during a Court proceeding other than words spoken and images
available to be captured:

        i.  after Defendants have obtained a court order allowing them to do so; and

        ii.  only when on the record;

   b.  using microphones in connection with the recording and transmission of Courtroom
proceedings unless those microphones are prominently displayed;

   c.  using cameras in connection with the recording and transmission of Courtroom
proceedings unless, to the satisfaction of the Court that issued the order granting
Defendants permission to record, the cameras have alerting devices, such as lights, that
make clear to attorneys, lawyers, and other attendants in the Courtroom that the camera is
recording (provided to the satisfaction of the Court where the recording and broadcasting
is taking place, that the alerting devices are not disturbing and in compliance with Cal.
Rule of Court, Rule 1.150(e)(8)(B));

d.   from using microphones in connection with the recording and transmission of Courtroom proceedings unless, to the satisfaction of the Court that issued the order granting Defendants permission to record, the microphones have alerting devices, such as lights, that make clear to attorneys, lawyers, and other attendants in the Courtroom that the microphone is recording (provided to the satisfaction of the Court where the recording and broadcasting is taking place, that the alerting devices are not disturbing and in compliance with Cal. Rule of Court, Rule 1.150(e)(8)(B));

e.   simultaneously transmitting to anywhere any data recorded or captured during a Courtroom proceeding when the matter is not being heard on the record; and

f.   using any camera or other device capable of transmitting data captured during Courtroom proceedings unless that camera or device is both:

   i.   approved by the Court issuing the order allowing Defendants to be present and record during Courtroom proceedings; and

   ii.   fitting with alerting devices, such as lights, that make clear to attorneys, lawyers, and other attendants in the Courtroom when the device is transmitting (provided to the satisfaction of the Court where the recording and broadcasting is taking place, that the alerting devices are not disturbing and in compliance with Cal. Rule of Court, Rule 1.150(e)(8)(B)).

Dated: _____          _____
                                  Honorable Judge

1

Respectfully submitted,

2

Ian Wallach, SBN 237849
3 FELDMAN & WALLACH
606 Venice Blvd., Suite C
4 Venice, CA 90291
Telephone: (310) 577-2001
5 Fax: (310) 564-2004
ian@feldmanwallach.com

6

7 Attorneys for Plaintiff,
ALPHA WALKER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Name & Address:
Ian Wallach, SBN 237849
FELDMAN & WALLACH
606 Venice Blvd., Suite C
Venice, CA 90291

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ALPHA WALKER

PLAINTIFF(S)

v.

TMZ PRODUCTIONS, INC., EHM PRODUCTIONS,
INC., TIME WARNER INC., CHRISTOPHER
MANIVONG, and DOES 1-10, inclusive

DEFENDANT(S).

CASE NUMBER

CV13-02268-RSWL (MRWx)

**SUMMONS**

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, Ian Wallach _____, whose address is 606 Venice Blvd., Suite C, Venice, CA 90291 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: 3/29/2013

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**CIVIL COVER SHEET**

## I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ )

Alpha Walker

## DEFENDANTS ( C_ box if you are representing yourself ☐ )

TMZ PRODUCTIONS, INC.; EHM PRODUCTIONS, INC.; TIME WARNER INC.; CHRISTOPHER MANIVONG; AND JOHN DOES 1 - 30.

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

IAN WALLACH, FELDMAN & WALLACH
606 VENICE BOULEVARD, SUITE C
VENICE, CA 90291 (310) 577-2001

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

## II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

## V. REQUESTED IN COMPLAINT: JURY DEMAND: ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No          ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

18 U.S.C.S. SECTION 2511, ET SEQL.

## VII. NATURE OF SUIT (Place an X in one box only.)

### OTHER STATUTES
☐ 375 False Claims Act
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/Etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Org.
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/Exchange
☒ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Info. Act
☐ 896 Arbitration
☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.)
☐ 153 Recovery of Overpayment of Vet. Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment

### REAL PROPERTY CONT.
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

### IMMIGRATION
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

### TORTS
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### CIVIL RIGHTS
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accomodations
☐ 445 American with Disabilities-Employment
☐ 446 American with Disabilities-Other
☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee Conditions of Confinement

### FORFEITURE/PENALTY
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Ret. Inc. Security Act

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405 (g))
☐ 864 SSID Title XVI
☐ 865 RSI (405 (g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:  Case Number:**   CV13-02268

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

CV-71 (02/13)                    CIVIL COVER SHEET                    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Dan Wallach_  DATE: MARCH 26, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |